EXHIBIT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                Criminal No.: 05-0210 (RMU)

AISSATOU PITA BARRY,

    Defendant.
_____/

## GREAT AMERICAN'S VERIFIED STATEMENT OF INTEREST

Pursuant to the Preliminary Order of Forfeiture dated September 12, 2005, Great American files its petition setting forth Great American's Verified Statement of Interest in the property described as "Any and all funds held by Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio, as security for Bond Number 5448945, effective April 29, 2003, in the name of Guinex International, Inc." pursuant to the General Rules for Civil Forfeiture Proceedings, 18 U.S.C. section 983, and states:

1.    Great American received notice of the Preliminary Order of Forfeiture ("Order") on September 16, 2005. Exhibit A.

2.    Pursuant to the order, Great American asserts a legal interest in the property described below.

3.    Alternatively, Great American seeks discharge from liability under the Bond.

## Background

Great American is engaged in the business of providing statutory surety bonds. The District of Columbia Money Transmitter Law, District of Columbia Official Code section 26-1001, et seq., ("D.C. Money Transmitter Law") requires that every application for a license be accompanied by a $50,000.00 surety bond. Guinex International, Inc. ("Guinex") obtained $50,000.00 Money Transmitter License Bond No. 5448945 (the "Bond") from Great American on about April 29, 2003, as part of its application for licensure under the D.C. Money Transmitter Law. In consideration for Great American issuing the Bond, Guinex deposited $50,000.00 in cash collateral with Great American to indemnify Great American from any loss it might suffer by reason of having issued the Bond (the "Cash Collateral").

It appears that Guinex applied for licensure under the D.C. Money Transmitter Law, but never completed the licensing application. Despite Guinex's failure to complete the licensing application, the District of Columbia did not return the Bond to Great American. Great American was never notified that Guinex had failed, in violation of the applicable statute, to complete the Money Transmitter application.

On about May 12, 2005, Great American received a seizure warrant from the Court commanding the seizure of property described as "any and all funds held by Great American Insurance Company, 580 Walnut Street, Cincinnati, Ohio, as security for bond number 5448945, effective April 29, 2003, in the name of Guinex International, Inc." (the "Warrant"). Great American immediately contacted the United States Attorneys' Office for

2

the District of Columbia and began the process of issuing a check for the funds subject to the Warrant. On May 17, 2005, Great American provided a check in the amount of $50,000.00 payable to U.S. Customs & Border Protection to Detective Phillip Robinson of the Washington D.C. Metropolitan Police Department via Federal Express.

### Argument

**1. The Cash Collateral is not the type of property subject to seizure under 18 U.S.C. section 983.**

The Cash Collateral, which Great American was holding as collateral to secure the Bond, is not the type of property subject to seizure under 18 U.S.C. section 983.

18 U.S.C. section 983(c)(3) provides, "if the Government's theory of forfeiture must be that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." The Cash Collateral is not an instrument of, proceeds from, or traceable to Guinex International, Inc.'s ("Guinex") alleged unlicenced money transmission because the alleged unlicensed money transmission occurred after Guinex placed the Cash Collateral with Great American as collateral to obtain the Bond.

According to Bennis v. Michigan, categories of property subject to forfeiture include: pure contraband (e.g., narcotics), proceeds of illegal activity (e.g., stolen property), and tools or instrumentalities used in commission of a crime (i.e., "derivative contraband," which is legally possessed but actually used to facilitate the criminal offenses). 516 U.S. 459-62 (1996)(Stevens, J., dissenting). The Cash Collateral is not illegal to possess, nor is it

3

contraband. The Cash Collateral is not proceeds of illegal activity because it was placed with Great American before the alleged illegal activity began. Finally, the Cash Collateral cannot be derivative contraband because it was in Great American's possession and was not used to facilitate the commission of the alleged crimes. Therefore, the Cash Collateral does not fall into a category of property subject to forfeiture and it should be returned to Great American.

2.   **In the alternative, if the Court finds the Cash Collateral is subject to seizure, Great American should be discharged from further liability under the Bond.**

If the Court finds that the Cash Collateral is subject to seizure under 18 U.S.C. section 983, and thus was properly seized, Great American requests that the Court discharge Great American from any further liability under the Bond and order the District of Columbia to return the Bond to Great American.

Great American's property interest in the Cash Collateral is that it secures the Bond and indemnifies Great American from any loss resulting from its having issued the Bond. Great American calculated the premium it charged Guinex based on the fact that the full face value of the Bond was secured by the Cash Collateral. In short, Great American would not have issued the Bond without the Cash Collateral.

Great American is engaged in the business of providing statutory surety bonds. Surety bonds are not insurance. Shannon R. Ginn Constr. Co. v. Reliance Ins. Co., 51 F. Supp. 2d 1347, 1350 (S.D. Fla. 1999)("Suretyship and insurance have similar characteristics and sometimes are discussed as realted concepts; nonetheless, they are distinct."). "Suretyship involves three parties: a principal, a surety and an obligee." Id.; see also

4

Cincinnati Ins. Co. v. Centech Bldg. Corp., 286 F. Supp. 2d 669, 689 (M.D.N.C. 2003)(citing Henry Angelo & Sons, Inc. v. Property Dev. Corp., 306 S.E.2d 162 (N.C. Ct. App. 1983)("Insurance contracts and suretyship contracts 'involve different functions, relationships, rights and obligations; and have been recognized and treated by the profession as distinctive fields of law for generations.'")). Surety bonds are often required by contract with the purpose of insulating the obligee from the risk of default by the principal. Shannon R. Ginn Constr., 51 F. Supp. 2d at 1350; see also King v. T.L. Dallas & Co. Ltd., 270 F. Supp. 2d 262 (D.P.R. 2003)("Surety obligations . . . are quite different from those addressed in insurance contracts.").

Legislatures often write surety bond requirements into laws as a measure of consumer protection. See, e.g., District of Columbia Official Code § 26-1007 (2001)("Each application must be accompanied by a surety bond . . . in the amount of $50,000.00 . . . [which] shall run to the District of Columbia for the benefit of any claimants against the licensee to secure the faithful performance of the obligations of the licensee in respect to the receipt, handling, transmission, or payment of money in connection with the sale and issuance of payment instruments or transmission of money."); see also Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc., 346 F.3d 552, 556 (5th Cir. 2003)(recognizing surety bond as consumer protection measure).

A bond is a contract, and courts apply standard principals of contract interpretation when determining the rights and obligations of a surety under a bond. Elm Haven Constr. Ltd. v. Neri Constr. LLC, 281 F. Supp. 2d 406, 412 (2d Cir. 2004). A surety's obligation on

a bond is limited to the strict terms of the bond. See, e.g., *Id.* ("The liability of sureties is to be determined by the specified conditions of the bond."); National Fire Ins. Co. of Hartford v. Fortune Constr. Co., 320 F.3d 1260, 1275 (11th Cir. 2003)("[T]he surety's liability . . . is limited by the terms of the bond."); In re Estate of Dickson, 736 A.2d 1007, 1011 (D.C. Ct. App. 1999)(holding that the Court could not and will not extend the liability of sureties beyond that for which they expressly contract); Goldberg, Marchiesano, Kohlman, Inc., v. Old Republic Sur. Co., 727 A.2d 858, 860-61 (D.C. Ct. App. 1999)("Under the law of the District of Columbia, '[a] surety's obligation must be measured by conditions stated in the bond . . . .'"); In re Kemper Ins. Cos., 819 N.E.2d 485, 490 (Ind. Ct. App. 2004)("A surety's liability is measured by the strict terms of his contract.").

The D.C. Money Transmitter Law provides: "the aggregate liability of the surety shall not exceed the principal sum of the bond." Therefore, by contract and statute, Great American's aggregate liability on the Bond is limited to the $50,000.00 penal sum of the Bond. Great American's liability on the Bond is an aggregate liability, not a per-occurrence liability.

The Cash Collateral Guinex provided to Great American to secure the Bond, which Great American has turned over pursuant to the seizure warrant issued in this matter on May 4, 2005, is Great American's security for any loss it may incur as a result of having issued the Bond. Great American has a property interest in the Cash Collateral. If the Court decides that the Cash Collateral was properly seized and/or that Great American cannot enforce its property interest in the Cash Collateral, Great American requests the Court discharge Great

6

American from further liability related to the Bond and order the Bond returned to Great American.

There are several reasons the Court should discharge Great American from further liability related to the Bond. The security interest provided by the Cash Collateral, which Great American received prior to any alleged criminal acts by Guinex, has been turned over pursuant to the seizure warrant. If the District of Columbia had made a claim against the Bond, Great American could have paid that claim. However, because the District chose to obtain a seizure warrant for the Cash Collateral rather than making a claim for the penal sum of the Bond, Great American is now exposed to liability under the Bond without the security for which Great American contracted. Great American should not be penalized because the District of Columbia chose to obtain a seizure warrant for the Cash Collateral instead of making a claim against the Bond.

## Conclusion

Great American has a property interest in the Cash Collateral as security for the Bond to indemnify Great American for any loss it may suffer as a result of having issued the Bond. Because Guinex placed the Cash Collateral with Great American prior to allegedly violating 18 U.S.C. section 1960, the Cash Collateral is not the type of property that is subject to forfeiture under 18 U.S.C. section 983. Great American requests that the Cash Collateral be returned to Great American. However, if the Court finds the Cash Collateral is subject to forfeiture under 18 U.S.C. section 983, Great American requests that the Court order Great American discharged from any further liability under the Bond and order the District of Columbia to return the Bond to Great American for the reasons stated above.

the validity of its interest in the property and for any further relief this Court deems proper.

Sworn and attested by:

By: _____
Print Name: Robert H. Rowan

STATE OF Ohio
COUNTY OF Hamilton

The foregoing instrument was acknowledged before me this 17th day of October, 2005, by Robert H. Rowen, who is personally known to me or has produced _____ as identification.

_____
Notary Public

MAUREEN DOUGHERTY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 08-12-06

SEAL

Maureen Dougherty

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been delivered via U.S. Mail to Mr. Kenneth L. Wainstein, United States Attorney's Office, 555 4th Street, NW, Washington, DC 20530, this 17th day of October, 2005.

    /s/   Thomas W. Brunner
Thomas W. Brunner
D.C. Bar No. 170480
Wiley Rein & Fielding LLP
1776 K Street NW
Washington, D.C. 20006
Telephone (202) 719-7000
Facsimile (202) 719-7049

James S. Myers
Florida Bar No. 64246
McRae & Metcalf, P.A.
306 S. Plant Avenue
Tampa, Florida 33606
Telephone (813) 225-1125
Facsimile (813) 225-1077

Attorneys for Great American Insurance Company