IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CR. No. 05-0210 (RMU) |
| : | |
| AISSATOU PITA BARRY, : | |
| : | |
| Defendant. : | |

### MEMORANDUM REGARDING BURDEN OF PROOF AT SENTENCING

At the Court's request, the United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum addressing the issue of which party bears the burden at sentencing of establishing, by a preponderance of the evidence, the defendant's eligibility or ineligibility for a decrease in her offense level under §2S1.3(b)(3) of the U.S. Sentencing Guidelines. The United States relies on the following points and authorities, and such other points and authorities as may be cited at the hearing on the motion, in support of its position that the defendant bears this burden:

### BACKGROUND

1.  On September 12, 2005, Aissatou Pita Barry (hereafter "defendant") pleaded guilty to one count of operating an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. § 1960, and a related criminal forfeiture allegation. In connection with her plea, defendant admitted that she incorporated and operated

Guinex International, Inc., (hereinafter "Guinex") in the District of Columbia as a money transmitting business, and that she failed to obtain a license to operate her business, as required by D.C. law, or to register her business with the Department of Treasury, as required by federal law.  Between October 26, 2001, and November 15, 2004, Guinex conducted over 65,000 transactions on behalf of approximately 5000 customers.  During this time period, Guinex received deposits from its customers totaling over $17,000,000 and in turn transferred over $15,500,000, via wires to various international locations for further distribution to individuals who had been designated by Guinex's customers in the United States.  Guinex generally charged a fee for its services of 10% of the total amount of money transferred.  Defendant and other Guinex employees accepted cash and other deposits from customers at Guinex's office.  Defendant and other Guinex employees also provided customers with the numbers of various bank accounts controlled by defendant and instructed customers that they could make deposits directly into those accounts.  Defendant stated that most, though not all, of her customers are people she sees in the community.  Defendant also stated that she obtained phone numbers and addresses from her customers, but she did not ask them to provide any form of identification.  Defendant and other Guinex employees did not ask customers to provide any information about the source of the monies they were transmitting.   Defendant was not familiar with the various forms used to report currency transactions or suspicious activity.

2.     The United States Sentencing Guideline applicable to Operating an Unlicensed Money Transmitting Business is §2S1.3. Under that guideline, defendant's base offense level is 6. *See* §2S1.3(a)(2). Twenty levels are added because the value of the funds defendant transmitted during the operative time period was between $7,000,000 and $20,000,000. *See* §§2S1.3(a)(2); 2B1.1(b)(1)(K). Section 2S1.3(b) sets out three specific offense characteristics that provide for increases and a decrease to the defendant's base offense level if certain conditions are met. In this case, the parties contest whether the defendant is eligible for a decrease in her offense level from a level 26 to a level 6 under §2S1.3(b)(3). That Section provides for such a decrease if four conditions are met: (1) subsection (a)(2) applies and subsections (b)(1) and (b)(2) do not apply; (2) the defendant did not act with reckless disregard of the source of the funds; (3) the funds were the proceeds of lawful activity; and (4) the funds were to be used for a lawful purpose. The government does not expect to argue at sentencing that the increases set forth in subsections (b)(1) and (b)(2) apply to the defendant. The government does contest, however, whether the remaining three remaining conditions of §2S1.3(b)(3) have been met.

## ARGUMENT

3.     Although the Sentencing Guidelines do not address which party bears the burden of proving increases or decreases to a defendant's base offense level, courts in this Circuit and in every other Circuit uniformly have placed the burden on the government to establish increases to the defendant's offense level and on the defendant to establish

decreases. As a result, the defendant in this case bears the burden of establishing that she is eligible for the decrease to her offense level set forth in §2S1.3(b)(3).

> **The Fourth Circuit Correctly Held in *Abdi* that the Government Bears the Burden of Establishing Increases in the Offense Level Under §2S1.3, and the Defendant Bears the Burden of Establishing Decreases.**

4.	The Fourth Circuit in *United States v. Abdi,* 342 F.3d 313 (4th Cir. 2003), *cert. denied*, 540 U.S. 1167 (2004), considered the specific question of which party bears the burden of establishing an increase and decrease to a defendant's offense level under §2S1.3, and concluded that the government bears the burden of establishing the increase set forth in that section and the defendant bears the burden of establishing the decrease.[1] In *Abdi*, the defendants pleaded guilty to conspiracy to structure financial transactions to evade reporting requirements in connection with their operation of an international money-transmitting service. The defendants acted as an agent for Al-Barakat, an international money transmitting exchange network headquartered in the United Arab Emirates. The defendants failed, however, to obtain the money transmittal license required by state law to conduct such a business, or to register their business with the Department of Treasury as required by federal law. The defendants' business received over $4,000,000 in cash from customers seeking to transmit money to Somalia, Ethiopia, Kenya, and Sudan. The defendants deposited the amounts received from their

---

[1]	The *Abdi* Court applied the 2001 version of the Sentencing Guidelines. The decrease to a defendant's base offense level that currently is found in §2S1.3(b)(3) then was found in §2S1.3(b)(2).

customers into several bank accounts at various branches of banks so that no single deposit exceeded $10,000, and the banks thus would not be prompted to file currency transaction reports required under federal law. The defendants then transmitted the funds to the Al-Barakat headquarters, where the funds were forwarded to agents in the destination countries for delivery to the intended recipients. Although the defendants knew many of their customers and kept records of customer transactions, they did not ask their customers about the sources of the money transmitted nor the uses for which the money would be used once it reached overseas. *Id.* at 315-16.

     5.    The district court concluded that the defendants were not entitled to the sentencing reduction set forth in §2S1.3(b) and sentenced the defendants according to the value of the structured funds attributable to each. *Id.* at 315. The defendants appealed their sentences, arguing that the district court should have reduced their sentencing levels to reflect their lack of knowledge that the funds structured were the proceeds of unlawful activities or were to be used for unlawful purposes. *Id.* Specifically, the defendants claimed that the district court erred by not applying U.S.S.G. §1B1.3(a), which limits a conspirator's sentencing liability to "reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." The defendants argued that since their knowledge of any illegal activities of their customers was not foreseeable, they may not be held accountable for it under the principle of relevant conduct. *Id.* at 316.

6. The Court rejected the defendants' argument, finding that it "fails to account for the plain meaning of U.S.S.G. §2S1.3(b)(2) and the burden that the defendants must carry in demonstrating that they are entitled to the benefit of the reduction." *Id.* In the latter regard, the Court found that, under § 2S1.3, the government, "of course," bears the burden of demonstrating requirements to increase the base level offense, while the defendant has the burden of showing entitlement to any reduction in offense level. *Id.* at 317. *See also, United States v. Figuereo*, 167 F.Supp.2d 540, 544 (N.D.N.Y. 2001) (placing burden on defendant to demonstrate that he is entitled to §2B1.3(b) adjustment); *United States v. Beaman*, 128 F.Supp.2d 1188, 1192 (N.D. Ind. 2001) (same).

7. In rejecting the defendants' specific claim that the district court should have limited the amount of structured funds attributable to them under the relevant conduct provisions of U.S.S.G. § 1B1.3(a), the court stated that § 1B1.3(a) only defines the factors to be considered generally in determining the scope of conduct for which a defendant is to be sentenced. The Court noted that the relevant conduct factors are not intended to overrule specific factors enumerated in applicable guidelines. *Id.*, *citing* U.S.S.G. §1B1.3(a) (stating that principles of relevant conduct apply "[u]nless otherwise specified"). Thus, the Court concluded that under § 2S1.3(b), "a defendant will benefit from a reduction in his sentencing level if he can *demonstrate affirmatively* that the structured monies were the proceeds of lawful activity and were to be used for lawful

purposes." *Id.*[2] *See also, Beaman*, 128 F.Supp.2d at 1194 ("[T]he only requirement of scienter in §2S1.3(b) is that found in §2S1.3(b)(1), requiring that the defendant knew or believed that funds were the proceeds of unlawful activity. Although the Sentencing Commission expressly made provision in (b)(1) for scienter, it clearly did not make a similar provision in §2S1.3(b)(2)." (Internal citation omitted.))

> **Courts in this Circuit Consistently Have Found that the Government Must Prove Eligibility for Increases in Offense Levels and the Defendant Must Prove Eligibility for Decreases.**

8.    The D.C. Circuit has not specifically addressed which party must demonstrate eligibility or ineligibility for a decrease to a defendant's offense level under

---

[2]    In ultimately finding that the defendants had not met their burden of establishing eligibility for a reduction in their offense levels, the Fourth Circuit also rejected the defendants' argument that they had satisfied the "proceeds of lawful activity" and "used for lawful purposes" requirements because the transmittal business they were operating was a lawful activity. The Fourth Circuit found that a reading of §2S1.3(b) that defines "proceeds" so narrowly "disassociates the term from common sense." *Id.* at 318.

> The funds held by the defendants were their customers' funds and therefore were not the proceeds of the wire-transmittal business, but rather were the proceeds of some other transactions by which their customers obtained the monies. And merely transferring the proceeds of an unlawful origin does not wash them of their taint....
>
> The same may be said for the defendants' argument that the funds were used for lawful purposes in transmitting them to the Al Barakat network. Again Al-Barakat was not being paid those funds for something that it rendered and that could provide a measurement of the lawfulness of the activity.

*Id.* The Court thus expressly disagreed with the Second Circuit's decision in *United States v. Bove*, 155 F.3d 44, 48 (2d Cir. 1998). *Id.*

§2S1.3(b). However, in the context of other Sentencing Guideline provisions, the D.C. Circuit has held that when a provision "relates to a matter that would enhance the defendant's sentence, the burden of proof is on the prosecution to satisfy the factual prerequisites of the provision." *United States v. Burke*, 888 F.2d 862, 869 (D.C. Cir. 1989) (finding that under §2D1.1(b), government must establish, by preponderance of evidence, facts supporting two level enhancement for possessing a firearm during commission of a drug offense). Concomitantly, "[t]he defendant properly bears the burden of proof under those sections of the Guidelines that define mitigating factors." *Id.* at n.10. *See also, United States v. Goodwin*, 317 F.3d 293, 297 (D.C. Cir. 2003) (defendant bears burden of establishing eligibility for downward departure in "reverse sting" narcotics sale under §2D1.1, Application Note 14 ); *United States v. White*, 1 F.3d 13, 18 (D.C. Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994) (defendant bears burden of establishing three level reduction under §2L2.3 for committing passport offense "other than for profit"); *United States v. McLean*, 951 F.2d 1300, 1302 (D.C. Cir. 1991), *cert. denied*, 503 U.S. 1010 (1992) ("The short of the matter is that if a defendant desires the two-point reduction [for acceptance of responsibility] specified in §3E1.1, he must be prepared to carry his burden of convincing the court by a preponderance of the evidence that he is entitled to it."); *United States v. Alberto-Genao*, 28 F. Supp. 2d 658, 663 (D.D.C. 1998), *aff'd* 203 F.3d 53 (D.C. 1999), *cert. denied*, 529 U.S. 1102 (2000) ("Whenever the government seeks an upward adjustment or upward departure that

might lead to an increase in the sentence under the Sentencing Guidelines, it has the burden of proof by a preponderance of the evidence; whenever the defendant seeks a downward adjustment or downward departure that might lead to a decrease in a potential sentence the same burden is on the defendant.  So it is with the safety valve [exception in §5C1.2 for certain narcotic offenses]." (Internal citations omitted.)  *See also*, *United States v. Soto*, 132 F.3d 56, 58 (D.C. Cir. 1997) (in evaluating claim that defense counsel provided ineffective assistance of counsel by failing properly to raise defendant's eligibility for adjustment under §3B1.2 for her role in the offense, Court found that counsel could not invoke this provision "merely by reciting to the court a list of mitigating facts," but rather the Court will look to "how well counsel marshals [the particular facts of the case].")

> **Courts in Every Other Circuit Universally Have Allocated to the Defendant the Burden of Proving Eligibility for Offense Level Decreases.**

9. Courts in every other Circuit agree that the defendant should bear the burden of establishing eligibility for offense level decreases under the Sentencing Guidelines.  *See, e.g., United States v. Ocasio*, 914 F.2d 330, 332 (1st Cir. 1990) ("A defendant has the burden of proving his entitlement to a downward adjustment in the offense level."); *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir. 1997) ("Generally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof."); *United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989) ("[W]hen the Government attempts to upwardly adjust

the sentence, it must bear the burden of persuasion…. Conversely, when the defendant is attempting to justify a downward departure, it is usually the defendant who bears the burden of persuasion." (Citations omitted.); *United States v. Urrego-Linares*, 879 F.2d 1234, 1239 (4th Cir.), *cert. denied*, 493 U.S. 943 (1989) ("[T]he defendant should bear the burden of proof to establish the mitigating factor(s) by a preponderance. However, if the government seeks to enhance the sentencing range and potentially increase the ultimate sentence, it should bear the burden of proof." (Citation omitted.); *United States v. Flanagan*, 80 F.3d 143, 146 (5th Cir.), *cert. denied*, 516 U.S. 1111 (1996) ("[A]s a general rule, the party seeking the adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment."); *United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990) (Court expressly rejected language in earlier decision which required government to bear the burden of proof on factual issues that could decrease a potential sentence); *United States v. Soto*, 48 F.3d 1415, 1423 (7th Cir. 1995) ("When a defendant requests a decrease in his offense level, he has the burden of demonstrating that he is eligible for the reduction by a preponderance of the evidence."); *United States v. Khang*, 904 F.2d 1219, 1222 (8th Cir. 1990) (noting that Guideline Sentencing is an adversarial proceeding, and accordingly, "the burden of proof falls on the party asserting the sentencing adjustment"); *United States v. Howard*, 894 F.2d 1085, 1089 (9th Cir. 1990) ("Under the Guidelines, the party seeking to adjust the offense level should be required to persuade the court that such an adjustment is merited."); *United*

10

*States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990) ("The government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases."); *United States v. DeVaron*, 175 F.3d 930, 939 (11th Cir.) (*en banc*), *cert. denied* 528 U.S. 976 (1999) ("The proponent of the downward adjustment – here the defendant – always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. This principle has been recognized by every circuit." (Citations omitted.)); *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The guidelines contemplate that the government has the burden of proving the applicability of sections which would enhance the offense level and the defendant has the burden of proving applicability of guideline sections which would reduce the offense level.").

    10.    In allocating the burden of proving mitigating factors under the Sentencing Guidelines on the defendant, the Courts have reasoned that "the burden of proof is ordinarily placed upon the party who benefits from the establishment of a fact." *Rodriguez*, 896 F.2d at 1033. *See also McDowell*, 888 F.2d at 291 ("This is simply an extension of our pre-guidelines analysis in which we held that "One who affirmatively seeks special favor at sentencing has the burden of proving why it should be bestowed." (Citations omitted.)) Courts also have noted that the defendant is more likely than the government to have knowledge of mitigating circumstances, and that such proof "may require the defendant's testimony which the government may not be able to compel."

11

*Rodriguez*, 896 F.2d at 1033. Moreover, allocating the burden of proving mitigating factors to the defendant "will help preserve the base offense levels." *Howard*, 894 F.2d at 1089-90. If the burden were placed on the government to disprove all mitigating factors, then every defendant would have an incentive to claim such reductions and, in essence, every defendant's offense level would begin at a lower level than the base offense level set forth in the Guidelines. *Id.* If the proof burdens instead are placed on the party asserting the reduction or enhancement, then "the base offense levels set by the Guidelines will only be subject to adjustment when adjustment is merited." *Id.* at 1090. As noted in *Khang*, this placement of the burdens of proof is consistent with Congress' intent in developing the Guidelines:

> "[T]he authors of the Sentencing Reform Act specifically rejected an approach that would entitle a defendant to the least severe sentence, favoring instead a framework designed to achieve the most appropriate sentence, considering the multiple purposes of sentencing.
>
> For these reasons, once the correct guideline and a base offense level are established, *the burden of persuasion as to specific offense characteristics and offense level adjustments properly should rest with the party asserting application.*

904 F.2d at 1222, *citing* Wilkins & Street, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, at 52 (some footnotes omitted) (emphasis added).

## Conclusion

11.     The D.C. Circuit and other Circuits universally have held that the government bears the burden of proving eligibility for offense level increases under the Sentencing Guidelines, and the defendant bears the burden of proving decreases.

As such, the defendant in this case must prove, by a preponderance of the evidence, that she has satisfied each of the four conditions set forth in §2S1.3(b)(2) in order to benefit from that offense level reduction.

                                        Respectfully submitted,

                                        KENNETH L. WAINSTEIN
                                        United States Attorney
                                        D.C. Bar No. 451058

_____By: _____
                                        ANGELA G. SCHMIDT
                                        Assistant United States Attorney
                                        Texas Bar No. 17764980
                                        Federal Major Crimes Section
                                        555 4th Street, N.W., 4th Floor
                                        Washington, D.C.  20530
                                        (202) 514-7273
                                        Angela. Schmidt@usdoj.gov

                                CERTIFICATE OF SERVICE

     I HEREBY certify that a copy of the foregoing has been served by first-class mail, postage prepaid, upon counsel for defendant, Richard Finci, Esquire, 7850 Walker Drive, Suite 160, Greenbelt, MD 20770 this 31st day of October, 2005.

                                        _____
                                        Angela G. Schmidt
                                        Assistant United States Attorney