UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | Criminal No. 05-0210 (RMU) |
| **AISSATOU PITA BARRY** | : | |
| Defendant | : | |

**DEFENDANT'S MEMORANDUM REGARDING
BURDEN OF PROOF AT SENTENCING**

I.   **INTRODUCTION**

Defendant has pleaded guilty to a single count Criminal Information charging her with Operating an Unlicensed Money Transmitting Business in Violation of 18 U.S.C. §1960. It is clear and undisputed that U.S.S.G. §2S1.3 is the applicable sentencing guideline for determination of base offense level. However, the parties do not agree as to whether the Defendant should receive a decrease in her offense level for the Specific Offense Characteristic set forth in §2S1.3(b)(3), the so-called "Safe Harbor."

This Memorandum sets forth the Defendant's position as to the law to apply to the Court's consideration of this sentencing issue with respect to burden of proof in light of the Supreme Court's recent landmark ruling in United States v. Booker, ___ U.S.___,125 S. Ct. 738 (2005).

II.     **STATEMENT OF FACTS**

The Stipulated Facts In Support of Guilty Plea Are Repeated Verbatim Below To Provide Context To This Memorandum.

>       On August 16, 1999, defendant incorporated Guinex International, Inc., (hereinafter "Guinex") in the District of Columbia with the stated purpose of transmitting money from the United States for delivery to various parts of the world.  Defendant is the President and sole owner of Guinex.  From August 1999 to November 2004, Guinex maintained an office at 6856 Eastern Avenue, N.W., Washington, D.C.  Defendant has played an active role in the day-to-day operation of the business since its inception.  In addition, as of November 2004, defendant employed two others to assist in the operation of the business.
>
>       Since its inception, Guinex has conducted transactions on behalf of approximately 5000 customers.  Between October 26, 2001, and November 15, 2004, Guinex conducted over 65,000 transactions for its customers.  During this time period, Guinex in turn transferred over $15,500,000, via wires to various international locations, including Guinea, Gambia,Senegal, Sierra Leone, Hong Kong, Singapore, China, the United Arab Emirates, Turkey, India, England and France, for further distribution to individuals who had been designated by Guinex's customers in the United States.  Guinex generally charged a fee for its services of 10% of the total amount of money transferred.  Defendant and other Guinex employees also provided customers with the numbers of various bank accounts controlled by defendant and Guinex instructed customers that they could make deposits directly into those accounts.  Defendant and other Guinex employees did not ask customers to provide any information about the source of the monies they were transmitting.
>
>       As of July 18, 2000, District of Columbia law provided that "no person shall engage in the business of money transmission without a license." 26 D.C. Code §1002(a).  Violators of this provision are subject to a criminal penalty of up to five years imprisonment, a fine of up to $25,000, or both.  26 D.C. Code §1023(c).  Neither defendant nor Guinex obtained a license to operate a money transmission

business in the District of Columbia at any time between October 26, 2001, and November 15, 2004.

On June 6, 2003, defendant submitted an application for a money transmitter license with the D.C. Department of Banking and Financial Institutions, which application included, among other items, a $500 application fee a $50,000 security bond. However, defendant never received the license, and defendant continued to operate her money transmitting business without a license until her arrest on November 15, 2004.

Under federal law, "[a]ny person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury...." 31 U.S.C. §5330(a). Defendant did not register Guinex with the Secretary of the Treasury at any time between October 26, 2001, and November 15, 2004.

In an interview conducted on November 15, 2004, defendant admitted that she has operated a money transmitting business in the District of Columbia since 1999. Defendant also stated that she had applied for a money transmitter license in the District of Columbia, but did not receive the license. Defendant stated that when she last called to check on the status of her application, she was told that the Licensing Board had lost her application and that she would have to submit another one. Defendant said that no one from the Licensing Board told her that she could operate her business without the license. Defendant also said that no one from the Licensing Board told her to stop operating her business until she received the license. Defendant stated that she did not know she needed a federal license and never applied for one.

Defendant stated that most, though not all, of her customers are people she sees in the community. Defendant obtains phone numbers and addresses from her customers, but she does not ask them to provide any form of identification. Defendant stated that she was not familiar with the various forms used to report currency transactions or suspicious activity.

> **Defendant acknowledges that the following property is property involved in, or is traceable to property involved in, her operation of Guinex International, Inc., as an unlicensed money transmitting business. . . [allegations as to currency omitted]**

Since Defendant's arrest, in order to facilitate resolution of this case, the Government has provided essentially open file discovery.  Defendant has specifically requested any and all evidence of substantive criminal wrongdoing beyond the failure to obtain the necessary state and federal money transmitter licenses.  In response, the Government has provided no evidence that Defendant was involved in money laundering, terrorism, tax evasion or any other substantive crime in connection with her unlicensed money transmitting business.

### III.    ARGUMENT

**After Booker, This Court Is No Longer Bound To The "All Or Nothing" Approach Of The Safe Harbor Provision And Has The Discretion To Sentence The Defendant Within The Prescribed Statutory Range As The Court Deems Reasonable.**

If the Sentencing Guidelines were applied to this case in a pre-Booker, non-discretionary manner, Defendant would receive a sentence in the range of 51 to 60 months, if sentenced without the benefit of the Safe Harbor provision and there were no other adjustments or departures.  On the other hand, the Sentencing Guidelines would allow the possibility of a probationary sentence if the Court held that the Safe Harbor provision, §2S1.3(b)(3) applied.  This wide disparity, resting strictly upon judicial fact-finding at sentencing in an all or nothing environment, is a prime example of what was unconstitutional and just plain wrong about the formerly mandatory

sentencing guideline regime. When the Supreme Court's Booker decision and the first appellate decisions of this Circuit interpreting Booker are analyzed, it is clear that the Government's proposed approach to determining whether the Safe Harbor applies in this case is an attempt to reinstate pre-Booker sentencing practices and concepts in a manner that would utterly ignore its holding. Instead, this Court should approach the application of the Safe Harbor to this case in full consideration of "reasonableness" as the overarching principle and mandate of the federal sentencing process.

In support of its position, the Government has crafted an argument that the burden is on the Defendant to prove all of the elements of the Safe Harbor by a preponderance of the evidence to receive its "special favor." The Government generally relies upon pre-Booker case law holding that the Defendant bears the burden of proof to establish the applicability of <u>any</u> reduction in offense level. See ¶8 of Government's Memorandum Regarding Burden of Proof at Sentencing. The Government has also located one case, <u>United States v. Abdi</u>, 342 F.3rd 313 (4th Cir., 2003), in which the Fourth Circuit held that the Defendant had the burden to prove the applicability of the Safe Harbor at sentencing. <u>This Circuit does not appear to have previously considered this issue</u>.

Remarkably, the Government cites not a single post-Booker Court decision anywhere in it's Memorandum, implicitly suggesting that Booker has no bearing whatsoever in the issue at bar. To the contrary, the 180 degree change in the use of the sentencing guidelines mandated by Booker have already been developed further in this Circuit, expressed most clearly by Judge Henderson in her concurring opinion

recently in United States v. Price, 409 F.3rd 436 (D.C. Cir., 2005), in which she observed that:

> The district court's duty to consult the Guidelines is, however, quite different from the previous duty to apply them mandatorily.  Now, in setting a particular sentence, the district court must "take account of the Guidelines together with other sentencing goals."  (Citation to Booker omitted).  This means that the district court *must* consider the criteria set forth in *section 3553(a)*, including the Guidelines sentencing range established for "the applicable category of offense committed by the applicable category of defendant" as well as policy statements of the Sentencing Commission. [citations omitted]. . . **What the practical difference between the duty to consult the Guidelines and the duty to apply them means under the "reasonableness" standard of review will emerge only on a case-by-case basis.**  But it is clear that the duty to consult the Guidelines neither reduces them to "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005), nor maintains de facto the mandatory sentencing regime declared unconstitutional in Booker,…"

United States v. Price, supra at 446 (concurring opinion of Karen L. Henderson, Circuit Judge.  (Emphasis added)).

In United States v. Coles, 403 F.3d 764 (D.C. Cir., 2005), addressing the "plain error" doctrine to determine whether a Defendant sentenced before the Booker decision who had not raised an objection to the guidelines at sentencing should be re-sentenced, the Court of Appeals rejected decisions of other circuits which have assessed plain error only in terms of whether a pre-Booker sentence exceeded that which the jury verdict itself would authorize.  Criticizing this approach, the Court stated that:

> "the problem with this approach is that it employs the wrong baseline for determining prejudice in light of Booker's remedy. . . the Court's employing this approach assess error and prejudice as if the pre-Booker, mandatory sentencing regime were still in place, as if the error were judicial fact finding under that regime. This flies in the face of the Supreme Court's remedial order in Booker.

Coles, supra at 768.

The correct approach, therefore, is not to place the burden of proof on one party or the other in a factual vacuum. In the post-Booker sentencing regime, the Court must consult the guidelines, of course, but must do so taking into account the nature of the issue at hand as Judge Henderson noted, on a case-by-case basis and to apply them in light of the reasonableness standard. See Price, supra at 446.

It is thus clear after Booker that the burden of proof as to the Safe Harbor provision is unimportant. Since the Guidelines are no longer mandatory, the "all or nothing" approach which apparently applied in other circuits placing the burden of proof on the Defendant, has now given way to the "reasonableness" standard. Such a standard plainly permits an assessment of varying degrees of conduct, assessment over a continuum rather than in an "all or nothing" manner. In other words, in a post-Booker sentencing regime, the Court need not make a decision as to whether one party or the other has satisfied the burden of proof as to the Safe Harbor provision, but rather may consider all of the evidence and make a decision which is reasonable taking into account the Safe Harbor provision in light of all of the sentencing considerations required by 18 U.S.C. §3553(a).

The all or nothing approach of the pre-<u>Booker</u> mandatory sentencing guidelines can now be considered, at least for now and hopefully forever, a relic of a failed experiment to deprive Judges of their traditional discretionary sentencing authority.1

## IV.    **CONCLUSION**

For the foregoing reasons, it is respectfully suggested that the reasonableness standard taken in light of the duty to consult the sentencing guidelines and sentencing factors contained in 18 U.S.C. §3553(a) allow this Court to decide the applicability of the Safe Harbor provision on a continuum rather an all or nothing basis as suggested by the Government in its Memorandum in this matter.

Respectfully submitted,

RICHARD A. FINCI,#389841
HOULON, BERMAN, BERGMAN, FINCI
 AND LEVENSTEIN, LLC
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
(301) 459-8200
e-mail: finci@houlonberman.com

---

1 This approach is also much more fair and reasonable because of the nearly impossible burden which would be placed upon Defendant if she were compelled to prove the negative, i.e., that she "did not act with reckless disregard of the source of the funds…, the funds were the proceeds of lawful activity…, and the funds were to be used for a lawful purpose." U.S.S.G. §2S1.3(b)(3). The Government has had the full resources of the Department of Homeland Security and I.C.E. available to it and they have conducted an exhaustive investigation in this case, an investigation which has not resulted in the discovery of any substantive crime beyond the licensing offense to which Defendant has pleaded guilty. A shift of the burden of proof to the Defendant would violate traditional concepts of Due Process essentially requiring Defendant to prove her innocence. If the Government has evidence that the Defendant committed her licensing violations in a manner which led to violations of substantive law by others or that she intentionally violated substantive criminal laws, the Government should be required to put forth the evidence. Suggesting that the Defendant should be sentenced in a guideline range as high as is applicable in the absence of safe harbor in this case without putting forth such evidence would lead to an unjust result in the extreme.

8

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this ____ day of _____, 2005, I mailed, postage prepaid, a copy of the foregoing Memorandum Regarding Burden of Proof at Sentencing to:

Angela G. Schmidt, Esquire
Assistant United State's Attorney
for the District of Columbia
Judiciary Center
555 Fourth Street, N.W.
Washington, D.C.  20001

                                                    RICHARD A. FINCI,#389841