IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CR. No. 05-0210 (RMU) |
| : | |
| AISSATOU PITA BARRY, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S MEMORANDUM
REGARDING BURDEN OF PROOF AT SENTENCING**

Defendant complains in her memorandum that the government's failure to mention the Supreme Court's decision in *United States v. Booker*, ___ U.S. ___, 125 S.Ct. 738 (2005), in its memorandum regarding which party bears the burden of establishing the defendant's eligibility or ineligibility for a decrease in her offense level under §2S1.3(b)(3) of the Sentencing Guidelines "implicitly suggest[s] that *Booker* has no bearing whatsoever in the issue at bar." Defendant's Memorandum at 5. Indeed, the government's view is that *Booker* did not change the manner in which a defendant's offense level is to be determined under the Sentencing Guidelines. The defendant's position to the contrary is not supported by *Booker* itself or by the post-*Booker* decisions the defendant cites.

Specifically, the defendant flatly states in her memorandum that in light of *Booker*, "the burden of proof as to the Safe Harbor provision [set forth in §2S1.3(b)(3)] is unimportant." Defendant's Memorandum at 7. Instead, the defendant argues that a "reasonableness" standard now should be applied in determining whether a specific offense characteristic set forth in the Sentencing Guidelines is applicable to her**.** *Id.* The defendant in essence seeks to expand *Booker* by arguing that

2

its ruling renders the Guidelines advisory not only with respect to the Court's ultimate decision whether to impose a Guidelines sentence on the defendant, but also with respect to the Court's preliminary decisions in determining the applicable Guidelines sentence. Defendant's position is plainly wrong.

The Supreme Court held in *Booker* that the Sixth Amendment's right to trial by jury is violated when a sentencing judge is compelled by the federal Sentencing Guidelines to impose an enhanced sentence based on the judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. 125 U.S. at 749-50. As a remedy, the Court invalidated the statutory provision of the Sentencing Reform Act that made the federal Guidelines mandatory, thus rendering the Guidelines "effectively advisory." *Id*. at 756-7, 764. (§§ 3553(b)(1) and 3742(e) "severed and excised"). The Court emphasized, however, that "[t]he remainder of the Act function[s] independently. Without the mandatory provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals." *Id.* at 764. (Citations and internal quotations omitted.)

3

The Second Circuit in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), *abrogation on other grounds recognized in United States v. Lake*, 419 F.3d 111, 114 n.2 (2d Cir. 2005), reviewed the *Booker* decision in depth to provide guidance for implementing the decision "to bench and bar alike" in that Circuit. *Id.* at 107. The Court summarized its guidance as follows:

> First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, *i.e.,* a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all the facts appropriate for determining either a Guidelines sentence or a non-Guidelines sentence.
>
> These principles change the Guidelines from being mandatory to being advisory, but it is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after *Booker/Fanfan*, district judges may return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum. On the contrary, the Supreme Court expects sentencing judges faithfully to discharge that statutory obligation to "consider" the Guidelines and all of the other factors listed in section 3553(a).

*Id.* at 113-4 (footnote omitted). Of particular significance to the issue currently before this Court, the Court in *Crosby* explained that "[t]he applicable Guidelines range is normally to be determined in the same manner as before *Booker/Fanfan*." *Id.* at 112.

Post-*Booker* decisions, rather than rendering existing Guidelines jurisprudence entirely archaic, as defendant suggests in her memorandum, in fact confirm that pre-*Booker* jurisprudence retains its precedential value when determining the applicable Guidelines range. For example, in *United States v. Price*, 409 F.3d 436 (D.C. Cir. 2005), the defendant argued that the district court had


4

erred in its application of the Sentencing Guidelines to his case by denying him a third point for acceptance of responsibility and by enhancing his sentence based on a prior conviction that he had challenged. The majority agreed with the defendant, and in so doing, relied on principles established in pre-*Booker* decisions interpreting the application of the Guidelines. *Id.* at 444-5. *See also, United States v. Canova*, 412 F.3d 331, 351-8 (2d Cir. 2005) (relying on pre-*Booker* decisions to resolve Guidelines calculation issues raised by government); *United States v. Hughes*, 401 F.3d 540, 556-60 (4th Cir. 2005) (relying on pre-*Booker* decisions to resolve Guidelines calculation issues raised by defendant). Though recognizing that *Booker* no longer requires a district court to impose a Guidelines sentence, the D.C. Circuit in *Price* nonetheless held that "when the District Court purports to apply the Guidelines it must do so without error." 409 F.3d at 443.[1]

    Moreover, the Second Circuit in *United States v. Barrero*, 425 F.3d 154 (2d Cir. 2005) recently rejected an argument very similar to the one that the defendant raises here. In *Barrero*, the defendant argued that "the district court should have considered the Guidelines advisory for purposes of calculating his criminal history points." *Id.* at 155. The Second Circuit clearly disagreed, stating that "*Booker* did not alter the content of the Guidelines or the requirement that the Guidelines results be determined according to the terms of the Guidelines." *Id.* at 156. As a result, the Second Circuit concluded that "the district court was plainly correct when it decided that *it did not have the discretion* to award [the defendant] only one point under the Guidelines once it had determined, by the process provided by the Guidelines, that [the defendant] had two such points." *Id.* at 157. (Emphasis added.)

---

[1] *But see*, *id.* at 447 (Judge Henderson, concurring in part) ("'[O]ffense levels,' 'adjustments,' 'departures' and all of the other Guidelines argot has been jettisoned by *Booker*.")

5

Likewise, in this case, *Booker* does not afford the Court discretion simply to ignore, as the defendant urges, what she does not dispute is the established pre-*Booker* Guidelines jurisprudence allocating to her the burden of proving her eligibility for a reduction in her offense level under §2S1.3(b)(3). Instead, as *Booker* itself and its progeny in this and other Circuits make clear, the manner in which the defendant's Guidelines range is to be calculated remains unchanged.[2]

                                                  Respectfully submitted,

                                                  KENNETH L. WAINSTEIN
                                                  United States Attorney
                                                  D.C. Bar No. 451058

_____By: _____
                                                  ANGELA G. SCHMIDT
                                                  Assistant United States Attorney
                                                  Texas Bar No. 17764980
                                                  Federal Major Crimes Section
                                                  555 4th Street, N.W., 4th Floor
                                                  Washington, D.C. 20530
                                                  (202) 514-7273
                                                  Angela. Schmidt@usdoj.gov

---

[2]     Although not pertinent to the issue currently before the Court, the government is compelled to respond to the inaccurate claim in defendant's memorandum that it has provided defense counsel "no evidence that Defendant was involved in money laundering, terrorism, tax evasion or any other substantive crime in connection with her unlicensed money transmitting business." Defendant's Memorandum at 4. To the contrary, the government previously provided defense counsel with evidence that defendant may have committed a violation of the currency reporting requirements set forth in Title 31 when, as reflected in her business records, she accepted a cash deposit from a customer in excess of $10,000 on September 9, 2004, and failed to report that transaction. The government and defense counsel also briefly discussed possible indicia of tax evasion. The government agrees that to date it has no reason to believe that the defendant was involved in any terrorist activities.

6

Case 1:05-cr-00210-RMU    Document 34    Filed 11/21/2005    Page 6 of 6