**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No.  05-0210 (RMU)** |
| | : | |
| **AISSATOU PITA BARRY,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States for the District of

Columbia, respectfully submits the following supplemental sentencing memorandum to address

the forfeiture issues Defendant has raised prior to her August 15, 2006 scheduled sentencing.

**BACKGROUND**

On September 12, 2005, during her plea hearing, Defendant Aissatou Pita Barry,

acknowledged that the seized funds, totaling $273,727.00, constituted property involved in, or

traceable to property involved in, her operation of Guinex International, Inc. as an unregistered

and unlicensed money transmitting business.  *See* Factual Proffer In Support of Guilty Plea, p. 4.

Defendant also admitted to these facts during her presentence investigation.  *See* Presentence

Investigation Report, p. 5.[1]

Nevertheless, Defendant now argues that the forfeiture of the entire amount of seized

funds would be excessive and grossly disproportional to the gravity of her offense.  Defendant

---

[1] Additionally, the Court issued a Preliminary Order of Forfeiture against Defendant's
interest in these funds, without any objection by Defendant.  At sentencing, pursuant to Rule
32.2(b)(3), Fed. R. Crim. P., the Preliminary Order of Forfeiture "becomes final as to the
defendant and shall be made a part of the sentence and included in the judgment."  At sentencing,
the Court is required to pronounce orally the forfeiture of Defendant's interest in the property as
part of the sentence imposed on Defendant Barry.

cites *United States v. Bajakajian*, 524 U.S. 321 (1998) as support for her excessive fine

assertion.[2]  Defendant appears now to assert that all of the $273,727.00 constitutes "untainted

funds," even while she acknowledges that a nexus exists between the funds and her operation of

an unlicensed money transmitting business.  *See* Factual Proffer In Support of Guilty Plea, p. 4.

Defendant made over one million dollars from her criminal activity, yet now she urges that none

of the proceeds (or funds traceable thereto) should be forfeited.  *See* Defendant's Sentencing

Memorandum, p. 17.

**ARGUMENT**

**CRIMINAL FORFEITURE OF $273,727 IN THIS CASE
IS NOT GROSSLY DISPROPORTIONAL**

When property is made subject to forfeiture by an Act of Congress on account of its

involvement in a criminal offense, the person contesting the forfeiture has the initial burden of

showing that the forfeiture of the property in its entirety would be grossly disproportional to the

gravity of the offense.  *See United States v. Ahmad*, 213 F.3d 805 (4th Cir. 2000) (the party

challenging the constitutionality of the forfeiture has the burden of demonstrating excessiveness);

*United States v. Premises Known as 6040 Wentworth Avenue*, 123 F.3d 685 (8th Cir. 1997)

(Eighth Amendment analysis is the same for civil and criminal cases; defendant has burden of

making initial showing of gross disproportionality); 18 U.S.C. § 983(g)(3) (codifying analysis

and burden for civil forfeiture purposes).  Defendant Barry cannot meet her burden to establish

that the forfeiture of $273,727.00 is grossly disproportional to the gravity of her offense.

---

[2] In *Bajakajian*, 524 U.S. at 323-337 the Supreme Court decided that the full forfeiture of $357,000 of unreported currency in a CMIR case (31 U.S.C. § 5316) would be "grossly disproportional to the gravity of the offense" unless the currency was involved in some other criminal activity.

In determining the gravity of Defendant Barry's offense for purposes of an Eighth Amendment excessive fine review, courts have been instructed to consider:  (1) the nature and extent of a defendant's criminal activity;[3] (2) its relation to other crimes; (3) other applicable criminal penalties; and (4) the harm the activity caused.  *Bajakajian*, 524 U.S. at 337-340; *see also Ahmad,* 213 F.3d at 813.[4]

---

[3] At the same time, courts also have held that such factors as the personal characteristics of the owner, the value of remaining assets, and the subjective impact of the forfeiture on particular persons are *not* appropriate considerations in determining whether the forfeiture violates the Excessive Fines Clause.  *See,* e.g.*, United States v. 817 N.E. 29th Drive, Wilton Manors*, 175 F.3d 1304 (11th Cir. 1999) (the personal characteristics of the owner, the character of his/her property, and the value of any remaining assets are irrelevant to the Eighth Amendment analysis); *United States v. Dicter*, 198 F.3d 1284 (11th Cir. 1999) (forfeiture of a medical license is not unconstitutionally excessive; the personal impact of the forfeiture on a specific defendant is not one of the factors the court considers in determining if a forfeiture is excessive under *Bajakajian*); *United States v. One Parcel ... 7079 Chilton County Road*, 123 F. Supp.2d 602 (M.D. Ala. 2000) ("The personal impact of a forfeiture upon the claimants is not a factor in determining whether the forfeiture violated the Eighth Amendment."), *rev'd on other grounds*, *United States v. Checkler*, 270 F.3d 1331 (11ᵗʰ Cir. 2001); *United States v. Two Parcels of Real Property ... 101 North Liberty Street*, 80 F. Supp.2d 1298 (M.D. Ala. 2000) (defendant's wealth and the effect of the forfeiture on the defendant are irrelevant to the Eighth Amendment).

[4] Among the many factors the courts have cited in determining the proportionality of the forfeiture to the gravity of the offense are the sophistication of the offense (in fraud cases), the amount of drugs sold (in drug cases), the amount of money laundered (in money laundering cases), the relationship of the property to the offense (in facilitating property cases)*,* the scope and duration of the scheme (in complex financial cases), the harm caused (in cases involving victims), and the length of the potential prison term and applicable fine for the underlying offense, whatever it may be.  *See e.g. United States v. Real Property Known as 415 East Mitchell Ave.*, 149 F.3d 472 (6th Cir. 1998) (upholding forfeiture of residence based, in part, on the sophistication and on-going nature of the marijuana-grow operation); *United States v. Wyly*, 193 F.3d 289 (5th Cir. 1999) (forfeiture of a $4 million business used to facilitate money laundering offense was not grossly disproportional to an offense involving only $175,000; Eighth Amendment analysis looks not just to the value of the forfeited property in comparison to the amount laundered, but to the scope and duration of the scheme, the harm caused, and the relationship of the property to the scheme); *United States v. One Parcel ... 2030-32 Main Street*, 2000 WL 1336473 (D. Conn. 2000) (forfeiture of facilitating property not excessive where value of property was less than the value of the drugs sold); *United States v. Real Property ... 40 Clark Road*, 52 F. Supp.2d 254 (D. Mass. 1999) (looking at nexus factors, including the scope and

**Consideration of the Nature and Extent of Defendant's
Criminal Activity/Relation to Other Crimes**

Defendant Barry incorporated Guinex International, Inc. in August 1999, and operated it

for the purpose of transmitting funds all over the world.  From at least October 2001 through

November 2004 – or for three years – she conducted over 65,000 monetary transactions in which

she transferred over $15 million dollars to various international locations.  None of these

transmissions occurred while she operated as a registered and licensed money transmitting

business.

Unlike *Bajakajian*, which involved a single reporting violation and no third parties,

Defendant Barry's crime was ongoing and involved thousands of customers, several financial

institutions, and numerous illegal financial transactions.  *See* Factual Proffer in Support of Guilty

Plea, p. 2.  Moreover, to the extent that Defendant Barry might assert that her offense involved a

mere failure to register, or that there is no evidence that she facilitated the transmission of

criminal proceeds, she is largely the cause of any such missing evidence.  Indeed, one of the

purposes of the registration requirement is to make money transmitters (and other money services

businesses) aware of their legal obligations to collect customer information and to file Suspicious

Activity Reports so that money laundering is less likely to occur.  *See* 31 C.F.R. § 103.125,

103.20(a).

Seldom did Defendant Barry did not require any form of identification from her

customers, and rarely, if ever, did she even attempt to learn the sources of the monies being

transmitted.  In fact, according to Defendant's own records, a minimum of $250,000 was

---

duration of offense, and availability of long prison term if there were a criminal case).

transferred by Defendant without any verification of the source of the funds. PSI, p. 16.

Defendant Barry allowed unidentified customers to make deposits directly into accounts that she

had opened at financial institutions. *See* Factual Proffer in Support of Guilty Plea, p. 2. It is

precisely this type of harm that the state and federal licensing requirements, with their attendant

know-your-customer obligations, are intended to mitigate. The facts demonstrate that Defendant

Barry's offense was grave, and the magnitude of the unrealized or unknown risk of harm that her

operation posed to the integrity of the financial systems in the United States was substantial.

Moreover, the $273,727 at issue can hardly be deemed grossly disproportional to the

gravity of her offense, because it is only a fraction of the value of the funds Defendant Barry

illegally transmitted. Even more significantly, the amount sought to be forfeited is only a

fraction of the approximately $1.5 million in proceeds that Defendant Barry obtained as fees she

charged for her illegal operation. Courts have recognized that the Eighth Amendment's

excessive fine analysis is not even implicated where only proceeds garnered from illegal activity

are being forfeited. *See United States v. Betancourt*, 422 F.3d 240, 250-51 (5th Cir. 2005) ("the

Eighth Amendment has no application to the forfeiture of property acquired with proceeds"; the

forfeiture of a winning lottery ticket purchased with drug proceeds therefore could not violate the

Excessive Fines Clause, regardless of the value of the lottery winnings; that the forfeiture greatly

exceeded the maximum statutory fine is irrelevant); *United States v. Powell*, 2 Fed. Appx. 290,

294 (4th Cir. 2001) (following pre-*Bajakajian* cases holding that the forfeiture of proceeds is

never excessive; for this purpose, proceeds and property traceable to proceeds are the same

thing); *United States v. 1948 South Martin Luther King Dr.*, 270 F.3d 1102, 1115 (7th Cir. 2001)

(Eighth Amendment does not apply to forfeiture of property purchased with drug proceeds).

In this case, Defendant Barry admits that the property subject to forfeiture is property involved in, or traceable to property involved in, her operation of an unlicensed money transmitting business (*see* Factual Proffer in Support of Guilty Plea, p. 4), and the forfeiture the United States seeks is considerably less than the proceeds Defendant Barry earned from her illegal activity.  In this case, the Court could readily have ordered Defendant Barry to forfeit $1.5 million (had the United States identified and pursued that amount), before any excessive fines issue might properly surface.

**Consideration of Other Applicable Penalties**

Under 18 U.S.C. §§ 1960 and 3571(a) and (d), Defendant Barry faces a sentence of up to five years and a maximum statutory fine of $250,000 or up to twice the gross pecuniary gain from her offense.  Defendant Barry's acknowledged pecuniary gain was roughly $1.5 million, and the fine range for her offense under the Sentencing Guidelines appears to be between $10,000 and $100,000.  If a forfeiture is within the maximum allowable statutory fine, there is a strong presumption that it is constitutional; if it is within the range of fines under the sentencing guidelines, it is almost certainly not excessive.  *Bajakajian*, 524 U.S. at 334.[5]  *Cf. Ewing v.*

---

[5] Many courts have looked to the maximum statutory fine as a leading, if not the exclusive, factor in determining the validity of the forfeiture under the Eighth Amendment. *See Wilton Manors*, 175 F.3d at 1309 (if the value of the property is less than the maximum statutory fine, a "strong presumption" arises that the forfeiture is constitutional; if the value of the property is within or near the permissible range of fines under the Sentencing Guidelines, the forfeiture "almost certainly" is not excessive); *United States v. One Parcel … 10380 SW 28th Street*, 214 F.3d 1291 (11th Cir. 2000) (forfeiture of residence worth $119,000 not excessive when compared to maximum statutory fine of $4 million); *United States v. Bieri*, 68 F.3d 232 (8th Cir. 1995) (forfeiture "cannot be excessive" where property is "roughly equal in value to the total dollar volume of the criminal activity" and the value is "far less than the legislatively authorized statutory fines"); *United States v. Hill*, 167 F.3d 1055, 1072 (6th Cir. 1999) (because the maximum statutory fine for money laundering is "twice the value of the property involved in the transaction," a defendant who laundered one million dollars could be made to forfeit up to $2

*California*, 538 U.S. 11, 29 (2003) (policy judgments of the legislature in fixing the penalty for a given offense are "entitled to deference" when the court is weighing whether the penalty is grossly disproportionate to the gravity of the offense); *United States v. Wallace*, 389 F.3d 483, 486-87 (5th Cir. 2004) (in affirming forfeiture of aircraft for failure to register with FAA, court holds that even if the sentencing guideline fine, rather than statutory maximum, were a proper test, forfeiture of an asset worth two or three times the recommended guideline fine would not be excessive; unlike single CMIR offense in *Bajakajian*, failure to register is ongoing offense).

In evaluating whether any reduction of the forfeiture amount is constitutionally mandated here, the Court should consider that the forfeiture sought is less than one-tenth of the maximum statutory fine that Congress permits a court to impose under 18 U.S.C. § 3571(d) for the misconduct that forms the basis for Defendant Barry's conviction, and also less than three times the fine range that the Sentencing Guidelines might prescribe. Under neither test could this forfeiture properly be considered "grossly disproportional."

---

million without triggering any violation of the Eighth Amendment); *United States v. Young*, 2001 WL 1644658 (M.D. Ga. 2001) (following *Wilton Manors*; forfeiture of residence in which equity was within the range of the applicable fines under both the statutes and the sentencing guidelines was not excessive), *aff'd*, 221 F.3d 1355 (11th Cir. 2000); *United States v. Riedl*, 164 F. Supp.2d 1196 (D. Haw. 2001) (if the forfeiture is within the maximum statutory fine range, there is a "strong presumption" that it is constitutional); *United States v. Two Parcels of Real Property … 101 North Liberty Street*, 80 F. Supp.2d 1298 (M.D. Ala. 2000) (defendant's wealth and the effect of the forfeiture on the defendant are irrelevant to the Eighth Amendment; court compares the value of the property to the fines that could have been imposed); *United States v. Matai*, 173 F.3d 426 (4th Cir. 1999) (unpublished) (Table) (forfeiture of inventory of clothing store as property used to facilitate a money laundering offense not excessive even though defendants laundered only $11,000 because the maximum fine is $500,000 under section 1956); *United States v. One Parcel … 1512 Lark Drive*, 978 F. Supp. 935 (D.S.D. 1997) (forfeiture of marital residence was not grossly disproportionate given two-year duration of criminal activity, maximum fine for the criminal offense, and street value of the drugs compared to the value of the property); *United States v. Ownby*, 926 F. Supp. 558 (W.D. Va. 1996) (applying *Wild*, court compares equity in forfeited property with maximum statutory fine, as well as nexus factors).

### No Mitigation of the Forfeiture Is Necessary Here

Finally, although Defendant Barry argues that none of the funds should be forfeited, her

argument is unsupported by the law.  In mitigating a forfeiture, a court is not free simply to set

aside the forfeiture statute – or even to impose any amount of forfeiture that it sees fit.  In

enacting the forfeiture statutes, Congress has provided that _all_ of the property involved in the

offense is subject to forfeiture – limited only by the constitutional proscriptions embodied in the

Excessive Fines Clause.  *See* 18 U.S.C. § 982(a)(1).  In other words, the congressional mandate

that all of the property involved in an offense be forfeited to the United States remains in effect,

up to the point where any additional forfeiture would be constitutionally excessive.[6]  *See United*

*States v. U.S. Currency in the Amount of $119,984.00*, 304 F.3d 165, 175 n.7 (2d Cir. 2002)

(noting that *Bajakajian* does not bar forfeiture of some amount less than 100 per cent of the

seized currency, but greater than zero, when there is no connection to other illegal activity);

*United States v. $273,969.04 U.S. Currency*, 164 F.3d 462 (9th Cir. 1999) (remanding civil

forfeiture case for gross disproportionality analysis); *United States v. Real Property Located in El*

*Dorado County*, 59 F.3d 974, 986-87 (9th Cir. 1995) (the court must limit a civil forfeiture to an

appropriate portion of the asset to avoid an Eighth Amendment violation).  If the Court finds that

mitigation is appropriate, it must determine what amount of forfeiture – between zero and 100

per cent of the property involved in the offense – would comply with the requirements of the

---

[6] *Cf. United States v. Monsanto*, 491 U.S. 600, 606 (1989) ("Congress could not have
chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute
applied ..."); *United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000) (criminal forfeiture is a
mandatory aspect of the defendant's sentence); *Hill*, 167 F.3d at 1073-74 (court may not ignore
mandatory language of forfeiture statute and give defendant option of substituting cash for
forfeited items, unless section 853(p) applies).

forfeiture statute (providing for forfeiture of 100 percent of the property) without violating the Eighth Amendment.

Congress has demonstrated its intent that property involved in a violation of 18 U.S.C. § 1960 be forfeited under 18 U.S.C. § 981(a). Although the incorporation of Section 1960 into Section 982(a)(1)'s operative forfeiture language is relatively recent, in the context of violations of 1956 and 1957, courts historically have acknowledged that, for forfeiture purposes, the "property involved in such offense ... or traceable to such property" includes the commissions earned as part of the business. *See*, *e.g.*, *United States v. Puche*, 350 F.3d 1137, 1153-54 (11th Cir. 2003) (affirming money judgment equal to the combined value of the commission paid to the money launderer and the untainted money used to facilitate the offense); *United States v. Iacaboni*, 363 F.3d 1, 6 (1st Cir. 2004) (court enters money judgment equal to sum of amounts involved in all money laundering transactions making up the conspiracy to launder gambling proceeds, *including salaries paid to codefendants*, overhead expenses, and payouts to winning bettors, even though defendant did not retain the money for himself).

In this case, the United States seeks forfeiture of an amount far less than the amount Defendant Barry unlawfully transmitted – and well below the commissions she earned from her unlawful activity. Thus, the amount sought to be forfeited here falls well below an amount that might begin to approach excessive.

## CONCLUSION

Accordingly, for the reasons stated above, the defendant has failed to meet her burden and the Court should order forfeiture of the entire amount sought by the United States.

Respectfully submitted,

KENNETH L. WAINSTEIN
United States Attorney
DC Bar #451058

By:    /s/_____
ANGELA G. SCHMIDT
TX Bar #17764980
WILLIAM R. COWDEN
DC Bar #426301
Assistant United States Attorneys
United States Attorney's Office
555 4th Street, N.W.
Washington, DC 20530
(202) 307-0258 (phone)
(202) 414-8707 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing Memorandum to be served to counsel of record by e-mail and by means of the Court's ECF system on this 7th day of August 2006.

_/s/_____
WILLIAM R. COWDEN
Assistant United States Attorney